Case No. 12-4202

**United States Court of Appeals for the Sixth Circuit**

DAVID E. PETROSKEY,

*Plaintiff-Appellant,*

v.

C.A. PICARD, INC.,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of Ohio, Eastern Division

**BRIEF OF APPELLEE C.A. PICARD, INC.**

David A. Campbell  (0066494)
Vorys, Sater, Seymour and Pease LLP
2100 One Cleveland Center
1375 East Ninth Street
Cleveland, OH  44114
Telephone: (216) 479-6100
Facsimile:  (216) 479-6060
dacampbell@vorys.com

*Attorney for Appellee*
*C.A. Picard, Inc.*

# DISCLOSURE OF CORPORATE AFFILIATIONS
# AND FINANCIAL INTEREST

Sixth Circuit Case No: 12-4202
Case Name: *Petroskey v. C.A. Picard, Inc.*

Name of counsel: David A. Campbell

Pursuant to 6th Cir. R. 26.1, C.A. Picard, Inc. makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

| |
|---|
| No. |

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list below the identity of such corporation and the nature of the financial interest:

| |
|---|
| No. |

# CERTIFICATE OF SERVICE

I certify that on February 6, 2013 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users, or if they are not, by placing a true and accurate copy in the United States mail, postage prepaid, to their address of record.

/s/ David A. Campbell

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................iv

STATEMENT IN SUPPORT OF ORAL ARGUMENT .................................1

STATEMENT OF ISSUES FOR REVIEW .................................................1

STATEMENT OF THE CASE .......................................................................1

STATEMENT OF FACTS .............................................................................2

     A.    Petroskey's Employment with CAP Prior to July 2005........................2

     B.    July 2005 Change in Petroskey's Compensation Structure .................3

     C.    Petroskey's Employment Under the New Compensation Package........................................................................................5

     D.    Petroskey's Resignation and Post-Employment Complaint .................5

SUMMARY OF THE ARGUMENT ..............................................................7

ARGUMENT .................................................................................................8

I.     STANDARD OF REVIEW ...................................................................8

II.    PETROSKEY'S BREACH OF CONTRACT CLAIM FAILS BECAUSE HE IS NOT ENTITLED TO COMMISSIONS UNDER  THE NEW COMPENSATION PACKAGE ...................................9

III.   PETROSKEY'S PROMISSORY ESTOPPEL CLAIM FAILS AS A MATTER OF LAW ........................................................................13

     A.    No Clear and Unambiguous Promise for Commissions .....................13

     B.    Written Contract Bars Claim for Promissory Estoppel.......................14

IV.   WRITTEN CONTRACT BARS PETROSKEY'S QUANTUM MERUIT CLAIM .........................................................................16

CONCLUSION .............................................................................................17

CERTIFICATE OF COMPLIANCE..............................................................17

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ..............20

CERTIFICATE OF SERVICE ................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Cases**

Barnes v. City of Cincinnati, 401 F.3d 729 (6th Cir. 2005) ........................................ 8

Bldg. Indus. Consultants, Inc. v. 3M Parkway, Inc., 911 N.E.2d 356 (Ohio Ct. App. 2009) ................................................................................................................. 16

Borowski v. State Chem. Mfg. Co., 647 N.E.2d 230 (Ohio Ct. App. 1994) ............... 14

Burke & Assocs. v. Koinonia Homes, 735 N.E.2d 479 (Ohio Ct. App. 1999) ........... 16

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ......................................................... 8

City of Moraine v. Lewis, 784 N.E.2d 774 (Ohio Ct. App. 2003) .............................. 16

Doe v. Adkins, 110 Ohio App. 3d 427 (Ohio Ct. App. 1996) .................................... 13

Foster Wheeler Enviresponse, Inc. v. Franklin County Convenstion Facilities Auth., 678 N.E.2d 519 (Ohio 1997) .............................................................................. 9

Gallant v. Toledo Pub. Schools, 616 N.E.2d 1156 (Ohio Ct. App. 1992) ................. 14

Godfredson v. Hess & Clark, Inc., 173 F.3d 365 (6th Cir. 1999) ............................. 14

Johansen v. Ohio Dep't of Mental Health, 2012-Ohio-4834, 10 Dist. Case. No. 12AP-39 (Ohio Ct. App. Oct. 18, 2012) ............................................................. 15

Manno v. St. Felicitas Elem. Sch., 161 Ohio App. 3d 715 (Ohio Ct. App. 2005) ...... 14

Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398 (6th Cir. 2006) ................. 8

Moore v. Philip Morris Co., 8 F.3d 335 (6th Cir. 1993) ........................................... 8

Patrick v. Painesville Commercial Props., 123 Ohio Ap. 3d 575 (Ohio Ct. App. 1997) .................................................................................................................. 13

Poss v. Morris, 260 F.3d 654 (6th Cir. 2001) .......................................................... 8

Shifrin v. Forest City Enterprises, Inc., 64 Ohio St. 3d 635 (Ohio 1992) ................. 9

Summers v. Leis, 368 F.3d 881 (6th Cir. 2004) ...................................................... 8

Vickers v. Wren Indus., 2005-Ohio-3656, 2nd Dist. Case No. 20914 (Ohio Ct. App. July 8, 2005) ...................................................................................................... 15

Zeck v. Sokol, 2008-Ohio-727, 9th Dist. No. 07CZ0030-M (Ohio Ct. App. ____) .... 17

**Other Authorities**

Fed. R. Civ. P. 56(c) ........................................................................................... 8

**Constitutional Provisions**

Black's Law Dictionary 194 (8th ed. 2004).............................................................. 11

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellee C.A. Picard, Inc. ("CAP") respectfully requests oral argument in this matter because the decisional process will be significantly aided by oral argument.

## STATEMENT OF ISSUES FOR REVIEW

The issue before this Court is whether the District Court appropriately granted summary judgment in favor of CAP upon finding that Plaintiff-Appellant had presented no genuine issue of material fact as to his claims for breach of contract, promissory estoppel, and quantum meruit.

## STATEMENT OF THE CASE

Petroskey initiated this suit against CAP alleging breach of contract, promissory estoppel, and quantum meruit in the Lorain County, Ohio, Court of Common Pleas. CAP removed the case to the United States District Court for the Northern District of Ohio. On September 11, 2012, the District Court granted CAP's motion for summary judgment against each of Petroskey's three claims. The District Court held that CAP did not breach the written employment contract with Petroskey and that Petroskey's claims for promissory estoppel and quantum meruit were barred by the existence of the written contract. Petroskey appeals the District Court's decision.

## STATEMENT OF FACTS

### A.    Petroskey's Employment with CAP Prior to July 2005

In May of 2000, Plaintiff began employment at CAP as a Product Sales Manager.  (PageID # 208, Fink Depo. Ex. 1, Doc. 31-1.)  Throughout his employment with CAP, Plaintiff was employed at C.A. Picard Surface Engineering, Inc. ("Surface Engineering"), a subsidiary of CAP located in Elyria, Ohio.  At the time of Petroskey's hiring, George Zambo was the President of Surface Engineering.  (Id.)  Petroskey's original compensation structure was reflected in his original, written employment contract negotiated with George Zambo.  (Id.; PageID # 216-18, Petroskey Depo. at 7-9, Doc. 31-2.)  Effective until July of 2005, Petroskey's original compensation was as follows (the "Old Compensation Package"):

- $55,000 base salary;
- 20% commissions on the net profit from "sand and shot" parts sales; and
- 30% commissions on the net profit from any other product he brought in or mainly developed for CAP.

(PageID # 208, Fink Depo. Ex. 1, Doc. 31-1.)  On July 2005, Petroskey was owed $61,000 in commission payments for the preceding five years.  (PageID # 218, Petroskey Depo. at 9, Doc. 31-2.)  However, that July, Petroskey agreed to forego the entire amount in past due commissions.  (PageID # 223, Petroskey Depo. at 31, Doc. 31-2; PageID # 209, Fink Dep. Ex. 4, Doc. 31-1.)

**B.**     **July 2005 Change in Petroskey's Compensation Structure**

In July of 2005, R. Mark Fink was hired as President of CAP.  (PageID # 211, Fink Depo. at 10, Doc. 31-1; PageID # 216, Petroskey Depo. at 7, Doc. 31-2.) At that time, Interim President John Dickey had already replaced former President George Zambo.  (PageID # 216, Petroskey Depo. at 7, Doc. 31-2.)

During July 2005, Mark Fink and John Dickey met with Petroskey to review his employment and compensation status.  (PageID # 217, Petroskey Depo. at 8, Doc. 31-2.)  During negotiations regarding Petroskey's payment, Fink and Dickey, acting as CAP representatives, relayed to Petroskey that his Old Compensation Package was not viable going forward.  (PageID # 212, Fink Depo. at 17, Doc. 31-1.)  At that meeting, Petroskey asked for the amount in commissions that he believed were due to him at that point.  (PageID # 218, Petroskey Depo. at 9, Doc. 31-2.)  Fink and Dickey offered to either pay the amount in commissions that Petroskey believed was due, which would be his last paycheck from CAP, or to restructure Petroskey's compensation package in exchange for Petroskey relinquishing the commissions payment.  (PageID # 213, Fink Depo. at 27, Doc. 31-1; PageID # 218-19, Petroskey Depo. at 9-10, Doc. 31-2.)  Petroskey understood that in restructuring his compensation package, CAP was motivated by a belief that his old package was too rich.  (Page ID # 223, Petroskey Depo. at 31, Doc. 31-2.)  Petroskey chose to give up his old compensation structure and

relinquish any payment of commissions in exchange for the restructured compensation package (the "New Compensation Package"), which provided for an increased annual salary, car allowance, and an annual bonus. (Id.; PageID # 209, Fink Depo. Ex. 4, Doc. 31-1; see also PageID# 276, Petroskey Depo. at 16, Doc. 35-5).

On July 25, 2005, John Dickey provided to Petroskey in writing the terms of the New Compensation Package. (PageID # 209, Fink Dep. Ex. 4, Doc. 31-1; PageID # 213, Fink Dep. at 25-26, Doc. 31-1; PageID # 218-19, Petroskey Dep. at 9-10, Doc. 31-2.) As written, Petroskey's new package was comprised of a $10,000 increase in annual salary to $65,000, a $400 car allowance per month, and an "[a]nnual bonus (effective July 1 05- to Jun 30 06), per plan to be presented by Mark Fink, President." (PageID # 209, Fink Dep. Ex. 4, Doc. 31-1; see also PageID # 218-19, Petroskey Dep. at 9-10, Doc. 31-2.) Additionally, to reflect the agreement, Dickey wrote, "[p]er our discussion (Petroskey, Fink, Dickey) these changes void any previous commitments, written or verbal, with former management of the company." (Id.) The New Compensation Package did not include commissions. (Id.) Unlike commissions, which are determined by set criteria, a bonus is discretionary. (PageID # 214, Fink Depo. at 30, Doc. 31-1.) Petroskey understands the discretionary nature of bonuses. (PageID # 226, Petroskey Depo. at 37, Doc. 31-2.)

4

### C.    Petroskey's Employment Under the New Compensation Package

At the end of 2006, Petroskey received a bonus of $1,500 for the 2005 to 2006 business year and an increase in annual salary to $66,950.  (PageID # 210, Fink Depo. Ex. 6, Doc. 31-1.)  Petroskey accepted his bonus with no complaints regarding its amount or calculation.  (PageID # 220, Petroskey Depo. at 22, Doc. 31-2; see also PageID # 264, Fink Depo. at 40, Doc. 35-3.)  Petroskey's bonus was one of the bonuses that Mark Fink discretionarily decided to pay each employee in order to share the company's $70,000 in profits.  (PageID # 298, Fink Depo. at 34, Doc. 36-1.)  The bonuses for the 2005 to 2006 business year were determined by the company's profitability as a whole, rather than each employee's individual performance.  (PageID # 220, Petroskey Depo. at 22, Doc. 31-2.)  After 2006, the company was either not profitable or had very little profits.  (PageID # 222, Petroskey Depo. at 27, Doc. 31-2.)  CAP's financial information reflecting this lack of profitability was provided to Petroskey on a monthly basis.  (Id.)

### D.    Petroskey's Resignation and Post-Employment Complaint

In September of 2007, Petroskey submitted a letter to CAP giving his two-week notice of resignation.  (PageID # 227, Petroskey Dep. Ex. B, Doc. 31-2.)  In his letter, Petroskey makes no mention of any payments or bonuses that he felt he was owed.  (Id.; PageID # 221, Petroskey Dep. at 24, Doc. 31-2.)  In fact, Petroskey made no mention of any payments or bonuses that he felt he was owed

until his attorney contacted CAP many months after Petroskey's resignation. (PageID # 224-25, Petroskey Dep. at 35-36, Doc. 31-2.)  Petroskey brought this suit on August 14, 2009.  (PageID # 9, Complaint, Doc. 1-2.)

In July of 2005, Petroskey accepted the New Compensation Package as a complete replacement for the terms of the Old Compensation Package.  (PageID # 209, Fink Depo. Ex. 4, Doc. 31-1.)  Subsequently, Petroskey accepted and retained all amounts from his additional salary, car allowance and bonus that he received while working under his New Compensation Package.  (See PageID # 220, Petroskey Depo. at 22, Doc. 31-2; PageID # 224, Petroskey Depo. at 35, Doc. 31-2.)  However, Petroskey is now also claiming entitlement to between $70,778 and $85,658 in commissions for his employment during 2006 and 2007 under his New Compensation Package.  (PageID # 143-44, Petroskey's Motion for Leave to Amend His Prayer for Relief, Doc. 28.)

# SUMMARY OF THE ARGUMENT

The District Court properly concluded that summary judgment is appropriate against Petroskey's claims for breach of contract, promissory estoppel, and quantum meruit.   Prior to July 2005, Petroskey earned commissions on set percentages of profits under his employment agreement.   Then, in July 2005, Petroskey admittedly agreed to relinquish past due commissions and change his compensation arrangement.  The new compensation arrangement was reflected in a written agreement and provided for an increased salary, car allowance, and an annual bonus instead of commissions.   Petroskey's three counts all claim he is owed commissions for his time working under the compensation agreement entered in July 2005.   However, the annual bonus language in the July 2005 agreement is unambiguous that Petroskey's compensation does not include commissions, and, accordingly, Petroskey's claim for breach of contract fails. Petroskey's claim for promissory estoppel fails because the compensation agreement and circumstances surrounding the agreement show that no clear, unambiguous promise for commissions was made.  Further, the existence of the written compensation agreement bars both Petroskey's claims for promissory estoppel and quantum meruit.

# ARGUMENT

## I.    STANDARD OF REVIEW

Summary judgment is proper when the moving party establishes that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party would bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party has met its burden to identify the absence of a genuine issue of material fact, "the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial."  Moore v. Philip Morris Co., 8 F.3d 335, 339-40 (6th Cir. 1993).

To defeat a motion for summary judgment, the non-moving party may not rely merely upon bare assertions, conclusory allegations, or suspicions.  Summers v. Leis, 368 F.3d 881, 887 (6th Cir.  2004).  Instead, the non-moving party is under an affirmative duty to point out specific facts in the record that create a genuine issue of material fact.  Poss v. Morris, 260 F.3d 654, 665 (6th Cir. 2001).

This Court reviews a district court's ruling on a motion for judgment on a *de novo* basis.  Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 405 (6th Cir. 2006); Barnes v. City of Cincinnati, 401 F.3d 729, 736 (6th Cir. 2005).

## II. <u>PETROSKEY'S BREACH OF CONTRACT CLAIM FAILS BECAUSE HE IS NOT ENTITLED TO COMMISSIONS UNDER THE NEW COMPENSATION PACKAGE</u>

The District Court properly granted summary judgment against Petroskey's breach of contract claim for unpaid commissions.  In July 2005, Petroskey agreed to forego unpaid conditions and accepted the New Compensation Package, which did not include commissions and served to end all terms and benefits provided for under the Old Compensation Package.  The New Compensation Package provided for an increased salary, car allowance, and an "[a]nnual bonus (effective July 1 05- to Jun 30 06), per plan to be presented by Mark Fink."  Plaintiff's argument that the "[a]nnual [b]onus" was instead "commissions" is contrary to the unambiguous language of the agreement and fails as a matter of law.

When looking at an agreement, "[t]he intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." <u>Foster Wheeler Enviresponse, Inc. v. Franklin County Convenstion Facilities Auth.</u>, 678 N.E.2d 519, 526 (Ohio 1997) (internal citation omitted).  "When the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." <u>Shifrin v. Forest City Enterprises, Inc.</u>, 597 N.E.2d 499, 501 (Ohio 1992).  As a test for determining whether contract terms are ambiguous, "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity

results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Id.

Here, it is clear that Petroskey's employment agreement, the New Compensation Package, did not provide for commissions. Petroskey negotiated for the New Compensation Package in a 2005 meeting with Mark Fink and John Dickey. (Page ID # 223, Petroskey Depo. at 31, Doc. 31-2.) During negotiations, Petroskey understood that CAP was motivated by a belief that his Old Compensation Package, which included commissions, was too rich and not viable going forward. (PageID # 208, Fink Depo. Ex. 1, Doc. 31-1; Page ID # 223, Petroskey Depo. at 31, Doc. 31-2.) Plaintiff agreed to forego the Old Compensation and past due commissions, and accepted the New Compensation Package. (PageID # 208, Fink Depo. Ex. 1, Doc. 31-1; PageID # 209, Fink Dep. Ex. 4, Doc. 31-1.)

The written terms of the New Compensation Package reflect the parties understanding that past due commission payments were relinquished and that commissions were discontinued. (PageID # 209, Fink Dep. Ex. 4, Doc. 31-1; PageID # 213, Fink Dep. at 25-26, Doc. 31-1; PageID # 218-19, Petroskey Dep. at 9-10, Doc. 31-2.) The agreement states: "Per our discussion (Petroskey, Fink, Dickety) these changes void any previous commitments, written or verbal, with former management of the company." (PageID # 209, Fink Dep. Ex. 4, Doc. 31-

1.)  The agreement then lays out the terms of compensation: (1) "New Pay rate $65,000 per year" representing an increase in salary of $10,000; (2) Car allowance [of] $400 per month"; and an "[a]nnual [b]onus."  (PageID # 209, Fink Dep. Ex. 4, Doc. 31-1; PageID # 213, Fink Dep. at 25-26, Doc. 31-1; PageID # 218-19, Petroskey Dep. at 9-10, Doc. 31-2.)  Accordingly, as of July 2005, Petroskey was no longer owed or accumulating commissions provided under the Old Compensation Package.

Unlike the Old Compensation Package, which provided for set "commission" rates, (PageID # 208, Fink Depo. Ex. 1, Doc. 31-1), the New Compensation Package provided an "[a]nnual [b]onus."  (PageID # 209, Fink Dep. Ex. 4, Doc. 31-1.)  The parties' written understanding as to CAP's motivation in renegotiating Plaintiff's compensation structure makes clear that an "[a]nnual [b]onus" was not simply a continuation of commission payments from under the Old Compensation Package.  (Page ID # 223, Petroskey Depo. at 31, Doc. 31-2; PageID # 212, Fink Depo. at 17, Doc. 31-1.)   By definition, a bonus is discretionary and not expected as part of an employee's regular compensation. Black's Law Dictionary 194 (8th ed. 2004).  Petroskey understands that, unlike a commission, a bonus is discretionary.  (PageID # 226, Petroskey Depo. at 37, Doc. 31-2.)  If commissions, rather than a discretionary bonus, had been intended under

11

the New Compensation Package, the parties would have used the word commission as they had under the Old Compensation Package.

Further, the fact that the bonus had not been agreed upon, but was instead "per plan to be presented by Mark Fink, President," highlights the discretionary nature of the "[a]nnual [b]onus." (PageID # 209, Fink Dep. Ex. 4, Doc. 31-1). Petroskey's previous compensation agreement, the Old Compensation Package, laid out specific percentages of commissions. (PageID # 208, Fink Depo. Ex. 1, Doc. 31-1; PageID # 216-18, Petroskey Depo. at 7-9, Doc. 31-2.) Under the New Compensation Agreement, there was no set standard or guarantee for the bonus. (PageID # 209, Fink Dep. Ex. 4, Doc. 31-1). Rather, Plaintiff simply agreed to a future bonus presented by Mark Fink, and, after one-year had elapsed under the New Compensation Agreement, Mark Fink presented that bonus and an increase in salary to Petroskey. (PageID # 210, Fink Depo. Ex. 6, Doc. 31-1.)

Petroskey failed to raise a genuine issue of material fact with regard to the payment of commissions under his New Employment Agreement. Petroskey was promised the opportunity for an annual bonus, not commissions, and he received that bonus in 2006 along with a raise.

### III.    PETROSKEY'S PROMISSORY ESTOPPEL CLAIM FAILS AS A MATTER OF LAW

#### A.    No Clear and Unambiguous Promise for Commissions

Petroskey's claim for promissory estoppel fails because he cannot establish the first element of his promissory estoppel claim: that there was a clear and unambiguous promise for the commission payments he is seeking for his employment in 2006 and 2007.  A claim for promissory estoppel requires that the plaintiff establish: (1) a clear and unambiguous promise; (2) reliance on the promise; (3) that the reliance is reasonable and foreseeable; and (4) that he was injured by his reliance.  Patrick v. Painesville Commercial Props., 704 N.E.2d 1249, 1254 (Ohio App. 1997) (citing Doe v. Adkins, 674 N.E.2d 731, 737 (Ohio App. 1996)).

Petroskey claims he was promised an amount between $70,778 and $85,658 in unpaid commissions for the years 2006 and 2007.   (PageId # 143-144, Petroskey's Motion for Leave to Amend His Prayer for Relief, Doc. 28.)  However, as Petroskey agreed to forego all past due commissions in July 2005, he is basing his claim on the "[a]nnual [b]onus" language in his New Compensation Package. (See id.; PageID # 218-19, Petroskey Depo. at 9-10, Doc. 31-2.; PageID # 209, Fink Depo. Ex. 4, Doc. 31-1.)   Yet, this "[a]nnual [b]onus" in the New Compensation Package was a change from Petroskey's previous compensation package, which specifically provided for a set percentage of profits in

13

commissions.    (PageID # 208, Fink Depo. Ex. 1, Doc. 31-1.)    In addition to relinquishing past due commissions, during negotiations regarding the change from commissions to an "[a]nnual [b]onus," Petroskey was aware that CAP was seeking to change his compensation structure.    (PageID # 223, Petroskey Depo. at 31, Doc. 31-2.)    Additionally, Petroskey understands that a bonus is discretionary.    (PageID # 226, Petroskey Depo. at 37, Doc. 31-2.)    CAP's agreement to pay an "[a]nnual [b]onus," which Petroskey accepted as part of a replacement for his previous set percentages of commissions, is not a clear and unambiguous promise to continue paying commissions.    Accordingly, Petroskey cannot establish the first element of his claim for promissory estoppel.

### B.    Written Contract Bars Claim for Promissory Estoppel

Petroskey's claim for promissory estoppel fails due to the existence of his written employment contract.  A written contract bars a promissory estoppel claim as a matter of law.  Manno v. St. Felicitas Elem. Sch., 831 N.E.2d 1071, 1077 (Ohio App. 2005) (citing Gallant v. Toledo Pub. Schools, 616 N.E.2d 1156, 1161 (Ohio App. 1992)); Godfredson v. Hess & Clark, Inc., 173 F.3d 365, 377 (6th Cir. 1999) ("Ohio case law clearly states that promissory estoppel does not apply in cases where an employee has a written contract of at-will employment"); see also Borowski v. State Chem. Mfg. Co., 647 N.E.2d 230, 235 (Ohio App. 1994) ("Promissory estoppel does not apply to oral statements made prior to the written

contract, where the contract covers the same subject matter"); Johansen v. Ohio Dep't of Mental Health, 2012-Ohio-4834, 10 Dist. Case. No. 12AP-39, ¶ 12 (Ohio App. 2012); Vickers v. Wren Indus., 2005-Ohio-3656, 2nd Dist. Case No. 20914, ¶ 43 (Ohio App. 2005) ("An implied contract or promissory estoppel claim cannot lie where a subsequent unambiguous written agreement relieves the obligations imposed by prior oral promises.").

Here, Petroskey's claim for commissions is based on the written contract for his New Compensation Package that refers to his "[a]nnual [b]onus."  (PageId # 143-144, Petroskey's Motion for Leave to Amend His Prayer for Relief, Doc. 28; PageID # 219, Petroskey Depo. at 10, Doc. 31-2.; PageID # 209, Fink Depo. Ex. 4, Doc. 31-1.)   Petroskey argues that he was induced to enter into the New Compensation Package containing the increased salary and "[a]nnual [b]onus" by CAP's alleged representation that Petroskey would "make-up" the commissions he was foregoing.   (Brief of Appellant at 21) ("This statement was critical to Petroskey and induced him to enter into the very employment contract at issue"). However, Plaintiff cannot maintain his claim for promissory estoppel based on an oral statement because that statement was allegedly made prior to entering into the written agreement as to the New Compensation Package.

## IV.    WRITTEN CONTRACT BARS PETROSKEY'S QUANTUM MERUIT CLAIM

Petroskey's claim for quantum meruit fails as a matter of law because there was a written contract relating to Petroskey's payment structure at CAP. "Ordinarily, when there is a written contract, a party cannot pursue the breaching party on the basis of quantum meruit. City of Moraine v. Lewis, 784 N.E.2d 774, 777 (Ohio App. 2003) (quoting Burke & Assocs. v. Koinonia Homes, 735 N.E.2d 479, 481 (Ohio App. 1999)); see also Bldg. Indus. Consultants, Inc. v. 3M Parkway, Inc., 911 N.E.2d 356, 361 (Ohio App. 2009) ("When there is an express contract related to the same subject matter, a claim for unjust enrichment cannot be sustained").

Here, throughout Petroskey's employment with CAP, there was a written contract relating to his compensation. From July 2005 until his resignation in 2007, Plaintiff worked under the New Compensation Package, which is reflected in a written contract that refers to his "[a]nnual [b]onus." (PageID # 219, Petroskey Dep. at 10, Doc. 31-2; PageID # 209, Fink Dep. Ex. 4, Doc. 31-1). Additionally, Plaintiff accepted and retained his increased salary and bonus that he received while working under the New Compensation Package. (See PageID # 220, Petroskey Depo. at 22, Doc. 31-2; PageID # 224-25, Petroskey Depo. at 35-36, Doc. 31-2.)

16

Petroskey cites <u>Zeck v. Sokol</u>, 2008-Ohio-727, 9th Dist. No. 07CZ0030-M, ¶¶ 13-14 (Ohio App. 2008) for the proposition that he can seek recovery under the theories of both breach of contract and quantum meruit. (Brief of Appellant at 23). However, in <u>Sokol</u>, the claim for unjust enrichment was being pursued for services that were outside the parameters of the agreement and were unrelated to the claim for breach of contract. <u>Sokol</u>, 2008-Ohio-727, at ¶¶ 13-14. The <u>Sokol</u> opinion is consistent with the principle that a claim for unjust enrichment is barred by a written contract relating to the same subject matter. <u>See</u> <u>id.</u> (allowing claim for unjust enrichment because the express agreement did not concern the services for which compensation was sought).

Petroskey's claim is based on his performance of services enumerated in his contract, which also lists the compensation for the performance of those services. (PageID # 209, Fink Depo. Ex. 4, Doc. 31-1.) Since Petroskey worked under a written contract relating to his services and compensation, Petroskey's quantum meruit claim is barred as a matter of law.

## <u>CONCLUSION</u>

Because the District Court properly dismissed all Petroskey's claims at the summary judgment stage, this Court should affirm the District Court's decision to grant summary judgment in favor of CAP and dismiss Petroskey's appeal in its entirety.

Respectfully submitted,

/s/ David A. Campbell
David A. Campbell  (0066494)
Vorys, Sater, Seymour and Pease LLP
2100 One Cleveland Center
1375 East Ninth Street
Cleveland, OH  44114
Telephone: (216) 479-6100
Facsimile:  (216) 479-6060
dacampbell@vorys.com

*Attorney for Appellee*
*C.A. Picard, Inc.*

# CERTIFICATE OF COMPLIANCE

1.　　This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(A) because this brief does not exceed 30 pages.

2.　　This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14 point Times New Roman font.

/s/ David A. Campbell
*Attorney for Appellee*
*C.A. Picard, Inc.*

## <u>DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS</u>

| Record Entry No. | Description | PageID # |
|---|---|---|
| 1-2 | Summons and Complaint | 8-19 |
| 28 | Motion for Leave to Amend Prayer for Relief | 143-44 |
| 31 | Motion for Summary Judgment | 196-207 |
| 36 | Reply in Support of Motion for Summary Judgment | 287-295 |
| 39 | Order Granting Motion for Summary Judgment | 314-325 |
| 40 | Judgment Entry | 326 |
| 31-1 | Deposition of Mark Fink and Exhibits | 208-14 |
| 31-2 | Deposition of David Petroskey and Exhibits | 216-19, 220-27 |
| 35-3 | Deposition of Mark Fink | 264 |
| 35-5 | Deposition of David Petroskey | 276 |
| 36-1 | Deposition of Mark Fink | 298 |

# CERTIFICATE OF SERVICE

The undersigned hereby certifies a true and accurate copy of Appellee C.A. Picard, Inc.'s Brief was served by electronic means through the Court's electronic filing system on this 6th day of February, 2013.

/s/ David A. Campbell
*Attorney for Appellee*
*C.A. Picard, Inc.*